## WALTER PERRY, BANK COMMISSIONER
*vs.*
## EAST HAMPTON BANK AND TRUST COMPANY

Superior Court      Middlesex County      File #6926

MEMORANDUM FILED NOVEMBER 14, 1938.

Charles J. McLaughlin, Attorney General; Joseph A. Levy, Special Assistant Attorney General, for the Plaintiff.

Bertrand E. Spencer, of Middletown; Apter & Nahum, of Hartford; Edward J. Lonergan, of Hartford; Samuel B. Harvey, of Willimantic, and Day, Berry & Howard, of Hartford, for the Defendant.

INGLIS, J. In 1934, the defendant bank was in a precarious position and needed additional capital. The Reconstruction Finance Corporation offered to invest $100,000 in preferred stock on condition, among other things, that the surplus of the bank be bolstered up by the directors contributing $15,000 in cash.

On December 7, 1933, The Federal Deposit Insurance Corporation had examined the bank and reported that certain notes held by the bank, the total book value of which as then fixed by the bank at $125,766.79, were subject to criticism in that each one of said notes would show a loss. On four of those notes it was anticipated that the loss would be total. The remaining 17 of the notes were each partially secured and it was anticipated that the loss would be only partial. The total loss on all of the notes was estimated at $75,200.71. Between the date of the examination and October 18, 1934, a total amount of $15,911.43 had been paid on these criticized notes.

On October 18, 1934, in consideration of the directors of the bank contributing $15,000 to the surplus of the bank, the bank entered into the trust agreement which is referred to in the application. The application is for advice as to whether certain collections made by the bank and later by the receiver

on account of the notes referred to in the trust agreement are the property of the bank itself or are to be applied to the trust for the benefit of the directors created by that agreement. The directors claim that under the agreement all collections made on the notes must go into the trust fund for the benefit of the directors until that fund equals $15,000. The receiver claims that collections made up to the book value of the notes less the estimated loss thereon are the property of the bank and that the trust is entitled to only such collections as are made in excess of those amounts. This controversy can be resolved only by determining what, under the agreement, the corpus of the trust was intended to be. If the corpus was intended to be the entire notes referred to the directors are right in their contention. If, however, it was intended that only such portion of each note as had been estimated as loss was to be in the corpus of the trust then the receiver's contention is right.

A careful examination of the wording of the agreement indicates that it was only that portion of each note which had been estimated as "loss" that was to be subject to the trust.

One of the recitals in the agreement reads as follows: "Where as it was agreed by the Bank that in consideration of the contribution of said sum of $15,000.00 in cash by the aforesaid persons certain criticized and/or unacceptable promissory notes of a fair amount, not exceeding $60,000.00, said notes being part of $75,000.00 face value of notes classified as "loss" by the Federal Deposit Insurance Corporation Examination of December 7, 1933, should be held in trust by the said Bank for the benefit of the aforesaid persons...."

Then the agreement clause itself reads as follows: "Now, therefore, these presents witness that the said The East Hampton Bank and Trust Company hereby declares that it holds the title to the criticized and/or unacceptable promissory notes of a fair amount not exceeding $60,000.00 listed in the Schedule attached hereto and made a part hereof, said promissory notes being part of $75,000.00 face value of notes classified as "loss" by the Federal Deposit Insurance Corporation Examination of December 7, 1933, in trust for the benefit of the aforesaid persons who contributed the said sum of $15,000.00 to the capital and surplus of said East Hampton Bank and Trust Company; but only to the extent of such payment...."

In other words, it is expressly provided that the corpus of

the trust shall be made up of obligations to the amount of $60,000.00, which obligations were listed in the $75,000.00 total which was listed as "loss" by The Federal Deposit Insurance Corporation. The only item of $75,000.00 in the F. D. I. C. examination is the total of those portions of the criticized notes which were estimated to be losses.

Moreover, reference to the schedule attached to the agreement, which the agreement itself specifies as listing the obligations which are to form the corpus of the trust, discloses that that schedule is entitled "Schedule Of Criticized And/Or Unacceptable Promissory Notes Referred To In The Foregoing Agreement" and that schedule has three columns headed respectively "Name of Maker", "Amount on Dec. 7, 1933" and "Amount Set Up In Trust." Under the column headed "Amount Set Up In Trust" is listed an amount which is equal to the amount which the F. D. I. C. had estimated would be the loss on each note.

On the face of the agreement itself, therefore, the expressed intention of the parties was clearly to place in the trust only that portion of each of the promissory notes as has been estimated to be "loss."

That such was the intention of the parties is fortified by a consideration of the circumstances under which the agreement was made. It must be borne in mind that the purpose of the directors in contributing the $15,000 was to improve the condition of the bank. It had been estimated that the bank stood to lose $75,000 on account of the notes in question but that the balance of these notes was good. It would not improve the statement of the bank to put $15,000 into its assets if at the same time securities owned by the bank then of a book value of $125,000 and recognized as being good at least to the extent of $50,000 were in substance imposed with a lien to secure the repayment of the $15,000. The Bank's statement would be improved by the contribution of $15,000 only in the event that the Bank continued to hold for itself so much of those securities as was estimated as being good in making up its statement. On the other hand, inasmuch as the statement was being made up on the assumption that certain portions of each note were loss it was only fair to let the directors who were making the contribution get the benefit of any salvage which might be made on those losses.

Certain of the directors have testified that it was their un-

derstanding of the contract that such collections as were made on the notes as a whole, that is, on the portions of the notes which had been listed as good, should be held for their benefit until the $15,000 had been repaid. On all of the evidence it cannot be found that their present recollection of the intent which they had in mind at the time the contract was signed is accurate or correct. But even though it were, the question is not as to what the intent of some of the parties to the contract was, but rather as to what is the intent which is expressed in the contract.

It is concluded that the intent of the parties expressed in the contract was that the corpus of the trust estate was to be only such portion of each of the notes as had been estimated as being "loss" as those items are listed in the last column of the schedule annexed to the contract. From which it follows that, on each note, taken separately from the others, all payments made thereon, whether of principal or interest, belong to the bank free of the trust until the principal of that note is reduced to the amount shown in the third column of the schedule, and any payments thereafter made on account of that note should be held as a part of the corpus of the trust for the benefit of the directors until the amounts so credited to the trust equal $15,000.

In accordance with that conclusion the questions propounded in the application are answered as follows:

(a) All amounts collected by the receiver down to May 31, 1938, on account of the notes in question are the property of the defendant bank.

(b) Collections made in the future on each note should be treated as the property of the bank until the amount collected pays the note down to the amount listed in the column headed "Amount Set Up In Trust" on the schedule annexed to the contract. Payments thereafter received on each note respectively are to be credited to the account of the "directors' trust."

(c) The balance of $479.15 now credited to "Directors Trust Accounts" is the property of the bank and is not properly credited to the directors' trust.